# United States Court of Appeals

### For the Eighth Circuit

_____

No. 19-3752

_____

United States of America

*Plaintiff - Appellee*

v.

Steven William Emery

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Pierre

_____

Submitted: November 19, 2020
Filed: November 19, 2021

_____

Before SHEPHERD, STRAS, and KOBES, Circuit Judges.

_____

STRAS, Circuit Judge.

Steven Emery remains at large after escaping from a residential reentry center just over four months ago. Having given him a chance to surrender and respond to an order to show cause, we now exercise our discretion and dismiss the appeal under the fugitive-disentitlement doctrine.

The doctrine, also known as the fugitive-dismissal rule, has deep roots in American law. *See State v. Hentges*, 844 N.W.2d 500, 502–05 (Minn. 2014) (tracing the rule's origins and its history). Maine was the first state to adopt it, and it was introduced into federal law in 1876. *See id.* at 502; *see also Smith v. United States*, 94 U.S. 97, 97–98 (1876). "[F]or well over a century," it has allowed courts to "dismiss the appeal of a defendant who is a fugitive from justice." *United States v. Diaz*, 980 F.3d 618, 619 (8th Cir. 2020) (per curiam) (quoting *Ortega-Rodriguez v. United States*, 507 U.S. 234, 239 (1993)). In many ways, Emery's situation is a classic one for disentitlement: he escaped from custody and refuses to return. *See id.*

But this case is unique in one respect. The last time we confronted this situation, the government filed a motion to dismiss in response to our request for supplemental briefing. *See id.* In this case, by contrast, the government has not responded. Given this procedural difference, we must answer the question that we left open before: can we dismiss this case on our own without input from the government? *See id.* For two reasons, we conclude that the answer is yes.

First, we have all but said so. Pointing to several cases, we recently noted that "our sister circuits" have suggested that "we may dismiss *sua sponte*" in circumstances like this one. *Id.* (citing *Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 130 n.7 (2d Cir. 2009); *Williamson v. Recovery Ltd.*, 731 F.3d 608, 628 n.6 (6th Cir. 2013); *F.D.I.C. v. Pharaon*, 178 F.3d 1159, 1163 n.6 (11th Cir. 1999)). In one case, the Ninth Circuit, sitting en banc, even exercised its discretion to dismiss over the government's *objection*. *See Parretti v. United States*, 143 F.3d 508, 511 (9th Cir. 1998) (en banc).

Although acting on our own may seem strange, the fugitive-disentitlement doctrine rests on notions of waiver and abandonment. *See Ortega-Rodriguez*, 507 U.S. at 240*; see also United States v. Sharpe*, 470 U.S. 675, 681–82 n.2 (1985) (explaining that the doctrine is an equitable one)*. The doctrine's very name makes that point clear: flight "*disentitles* the defendant to call upon the resources of the

Court for determination of his claims," rather than *entitles* the government to dismissal. *Estelle v. Dorrough*, 420 U.S. 534, 537 (1975) (per curiam) (emphasis added) (quoting *Molinaro v. New Jersey*, 396 U.S. 365, 366 (1970) (per curiam)). The reason, as the Supreme Court has explained, is that "flight operates as an affront to the dignity of the court's proceedings." *Ortega-Rodriguez*, 507 U.S. at 246.

Second, in these circumstances, even if the defendant and the government have disappeared, the underlying rationales for the doctrine have not. Unenforceability remains a problem. If we affirm, Emery is no more likely to reappear to serve the remainder of his sentence than he is now. *See Smith*, 94 U.S. at 97. Nor would addressing the merits deter escape. *See Estelle*, 420 U.S. at 537 (explaining that the doctrine "discourages the felony of escape and encourages voluntary surrenders"). Pressing ahead, especially when the appeal involves important issues of first impression, would send the message that courts are willing to overlook clear acts of defiance. *See Ortega-Rodriguez*, 507 U.S. at 245 (noting that "a fugitive 'flouts' the authority of the court by escaping").

The point is that, whether the government has weighed in at this point or not, this is a quintessential case for fugitive disentitlement. *Degen v. United States*, 517 U.S. 820, 825 (1996). We accordingly dismiss Emery's appeal.

_____